IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | In Proceedings<br>Under Chapter 13 |
| MICHAEL S. EUBANKS<br>ALICIA F. EUBANKS, | |
| | Case No. 17-40227 |
| Debtor(s). | |

OPINION

This matter is before the Court on confirmation of the chapter 13 plan filed by Michael S. Eubanks and Alicia F. Eubanks ("Debtors") and on the objection thereto filed by the Chapter 13 Trustee, Russell C. Simon ("Trustee"). The Debtors filed a chapter 13 plan with a proposed duration of five years. Pursuant to the terms of the plan, general unsecured creditors will be paid 100% of their claims. The Trustee objects to confirmation of the plan because the proposed monthly payments do not include all of the Debtors' disposable income. He argues that as a condition of confirmation, the Debtors must agree to the following: If the plan is modified post confirmation to pay less than 100% to unsecured creditors, the Debtors will provide a minimum pool to those creditors in an amount equal to the difference between their disposable income at confirmation and their actual plan payment, multiplied by the number of months that passed as of the effective date of the modification. The Trustee further asserts that if the Debtors refuse such a pledge, their plan payment must be increased to include the full amount of their disposable income. Finally, the Trustee argues that if the Debtors do not contribute all disposable income to their plan, general unsecured creditors are entitled to interest on their allowed claims.

The Debtors disagree. They contend that the Trustee is attempting to impose an additional requirement for confirmation, *i.e.*, that Debtors guarantee payment of excess

1

disposable income in post confirmation modifications of the plan. The Debtors further contend that because their plan proposes to pay 100% of unsecured claims, they are not obligated to increase their plan payments to include all disposable income in order for the plan to be confirmed. Debtors also dispute that unsecured creditors are entitled to interest on their claims.

## I. Facts

On March 22, 2017, the Debtors filed a chapter 13 petition, along with schedules and statements, Official Forms 122C-1 and 122C-2, and a proposed plan. According to the calculations set forth in Form 122C-1, the Debtors have above-median income. Schedule I reflects a decrease in income going forward based on employment changes for Debtor Alicia Eubanks. Pursuant to a Joint Stipulation of Fact (document #54), the parties agree that the Debtors' projected disposable income is $1,443.71 per month.[1] The Debtors propose a chapter 13 plan that extends over five years[2] with payments of $1,220.00 per month. Under the plan as proposed, general unsecured creditors will be paid 100% of their claims.

## II. Discussion and Analysis

Section 1325(b)(1) of the Bankruptcy Code sets forth the requirements for plan confirmation in the event of an objection. It reads:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

---

[1] The Debtors' monthly disposable income on Line 45 of Form 122C-1 is listed as $3,806.97. That is the figure cited by the Trustee in his initial brief (document #52). The Joint Stipulation of Fact, however, shows that both the Trustee and counsel for the Debtors agree that monthly disposable income is $1,443.71. Presumably, this figure is based on the decrease in income for Alicia Eubanks as indicated on schedule I.

[2] Section 1325(b)(4)(A)(ii) of the Bankruptcy Code requires an applicable commitment period of five years for above-median income debtors.

>    (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>    (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(A) & (B).  The statute is written in the disjunctive: Debtors must either pay unsecured creditors in full *or* must pay all projected disposable income over the duration of the plan. *Hamilton v. Lanning*, 130 S.Ct. 2464, 2469 (2010); *In re Gillen*, 568 B.R. 74, 77 (Bankr.C.D.Ill. 2017); *In re Bailey*, 2013 WL 6145819, at *6 (Bankr.E.D.Ky. Nov. 21, 2013); *In re Richall*, 470 B.R. 245, 249 (Bankr.D.N.H. 2012); *In re Johnson*, 2011 WL 1671536, at *3 (Bankr.N.D.Iowa May 3, 2011).  Thus, in the instant case, the Debtors may pay less than their disposable income over five years *if* such payments will pay unsecured creditors in full, *or* they may pay all of their disposable income over five years.[3]  The Debtors have chosen the option set forth in § 1325(b)(1)(A), *i.e.*, their monthly plan payments will not include all disposable income, but unsecured creditors will be paid 100% of their claims over a five-year period.

### A.  Does the Plan Violate the Good Faith Requirement of § 1325(a)?

The Trustee argues that despite the Debtors' technical compliance with § 1325(b)(1), they have not satisfied the Code's additional requirement that the plan be proposed in good faith.[4]  Specifically, the Trustee argues that the Debtors' lack of good faith is evidenced by their refusal to (1) guarantee payment of excess disposable income in post confirmation modifications of the plan, or (2) accelerate payment to unsecured creditors by including all disposable income

---

[3] Pursuant to § 1325(b)(4)(B), that period may be less than five years but only if the plan provides for payment in full of all allowed unsecured claims.

[4] Section 1325(a)(3) requires that the plan be proposed in good faith and not by any means forbidden by law. 11 U.S.C. § 1325(a)(3).

3

in their monthly plan payment. The Debtors counter that the plan is filed in good faith because the proposed payments comply with § 1325(b)(1)(A). Assuming that compliance with §1325(b)(1)(A) is not sufficient to satisfy the good faith test, the Debtors argue that their plan meets the good faith standard even under the broader "totality of circumstances" analysis.

The Debtors rely on a Seventh Circuit decision, *Matter of Smith*, 848 F.2d 813 (7th Cir. 1988) in support of their argument that the plan has been proposed in good faith. The Trustee relies on a later Seventh Circuit case coincidentally entitled *In re Smith*, 286 F.3d 461 (7th Cir. 2002).[5] For clarity, the Court will refer to the 1988 case as *Matter of Smith* and to the 2002 case as *In re Smith*.

In *Matter of Smith*, the court examined whether passage of the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA") had any impact on the good faith test adopted by the Seventh Circuit in *In re Rimgale*, 669 F.2d 426 (7th Cir. 1982). *Rimgale* held that in a chapter 13 proceeding, good faith is determined on a case-by-case basis under a "totality of circumstances" test. *Id*. at 432-33. The court concluded in *Matter of Smith* that the "totality of circumstances" test still applied. *Matter of Smith*, 848 F.2d at 821. In reaching that conclusion, however, the court stated that "[t]he focus of *Rimgale's* test has been narrowed only by the few specific provisions of BAFJA which now cover situations which fell within *Rimgale's* analysis." *Id*. at 820. Of particular significance, the court noted:

> Another new section, § 1325(b) … shows that a plan proposed in good faith does not require any specific amount or percentage of payments to unsecured creditors. Before, bankruptcy courts, in determining "good faith," looked at whether the plan proposed substantial or meaningful repayment to unsecured creditors. BAFJA changes that. Now, § 1325(b) states that if an unsecured

---

[5] The debtors in the *Smith* cases were not the same.

4

> creditor objects to confirmation, the bankruptcy court may not approve the plan unless that creditor is to receive full payment, §1325(b)(1)(A), or alternatively, the debtor meets the "ability to pay" test, that is, he commits all of his projected disposable income to the plan for three years, § 1325(b)(1)(B). A plan otherwise confirmable will be confirmed even if it provides for minimal (or no) payments if those payments meet the "ability to pay" test.

*Id*. (citations omitted).[6] The Debtors contend that under *Matter of Smith*, the amount of a debtor's plan payment is no longer a consideration in the good faith analysis. While the Debtors agree that the good faith test of § 1325(a)(3) still applies to plan confirmation, they contend that if their plan payment satisfies either § 1325(b)(1)(A) or (B), then any component of the good faith test concerning *the amount* of the plan payment is *per se* satisfied. Debtors' Response to Chapter 13 Trustee's Brief at pp. 5-6 (emphasis in original).

The Trustee argues that while the Seventh Circuit made passing reference to the "new" §1325(b) in *Matter of Smith*, its comments on the statute were mere dicta. According to the Trustee, the Seventh Circuit later revised and expanded the good faith analysis by incorporating the following factors into the good faith inquiry: (1) whether the debtor is really trying to pay creditors to the reasonable limit of his ability or trying to thwart them; (2) whether the plan accurately reflects the debtor's financial condition and affords substantial protection to unsecured creditors; and (3) whether the plan, taken as a whole, indicates a fundamental fairness in dealing with one's creditors. *In re Smith*, 286 F.3d at 466 (citations omitted). The Trustee argues that requiring the Debtors to guarantee payment of disposable income not currently committed to the plan in the event of future modification, or to increase payments to include all

---

[6] The language of § 1325(b)(1)(B) was changed with the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The phrase "three-year period" was changed to "applicable commitment period."

disposable income "reflects the underlying theme of the tests articulated in *In re Smith*." Chapter 13 Trustee's Reply Brief at p. 4.

The discussion of § 1325(b) in *Matter of Smith* may be dicta, as the Trustee suggests. Nevertheless, the clear implication is that the amount of a plan payment should not – in and of itself – determine whether the plan is proposed in good faith, as long as the plan complies with either §1325(b)(1)(A) or (B). The Seventh Circuit quoted the following passage from Collier's with approval:

> Since Congress has now dealt with the issue [of a debtor's ability to pay] in the ability-to-pay provisions, there is no longer any reason for the amount of a debtor's payments to be considered as even a part of the good faith standard…. Only where there has been a showing of serious debtor misconduct or abuse should a chapter 13 plan be found lacking in good faith.

*Matter of Smith*, 848 F.2d at 820-21 (citing 5 *Collier on Bankruptcy*, ¶ 1325.04[3] at 1325-17 (15th ed. 1988)). *See also In re Van Bodegom Smith*, 383 B.R. 441, 456 (Bankr.E.D.Wis. 2008) (construes Seventh Circuit's decision in *Matter of Smith* as prohibiting courts from considering a chapter 13 debtor's ability to pay as an indication of bad faith). While the Seventh Circuit's subsequent decision in *In re Smith* may have expanded the good faith analysis to include additional criteria, nothing in that case specifically addresses whether failure to commit all disposable income to plan payments or failure to pledge excess disposable income to future plan modifications constitutes bad faith.

In the instant case, the Debtors' plan complies with § 1325(b)(1)(A) by proposing to pay general unsecured creditors 100% of their claims over five years. While the debtors could pay unsecured creditors in a shorter period of time if they contributed all of their monthly disposable income, they are not required to do so under the plain language of §1325(b)(1). *In re Richall*,

6

470 B.R. at 249.[7] Because the Debtors' proposed plan payments satisfy the requirements of §1325(b)(1), the Court cannot conclude that the plan was proposed in bad faith solely because the payments do not include all disposable income. *See In re Johnson*, 2011 WL 1671536, at *3 (where unsecured creditors are being paid 100%, it is not bad faith to pay them over five years when there is excess disposable income to pay them sooner); *In re Williams*, 394 B.R. 550, 572 (Bankr.D.Co. 2008) (if a debtor complies with § 1325(b), the sufficiency of the assets devoted to the plan is not by itself a basis for finding bad faith).

Conversely, the Debtors' compliance with § 1325(b)(1) does not mean that the good faith requirement set forth in § 1325(a)(3) is automatically satisfied. The Court may still examine other factors under the Seventh Circuit's "totality of circumstances" test discussed in *In re Rimgale* and *Matter of Smith* and under the criteria set forth in *In re Smith*. Other courts addressing the interplay between the amount of payment under § 1325(b) and the good faith requirement of § 1325(a)(3) describe this approach as the "intermediate" approach. For example, in *In re Williams*, the court explained:

> This Court agrees with the intermediate approach. Thus, the primary measure of whether the debtor has committed sufficient income to the plan is the [projected disposable income] analysis of § 1325(b). This means that, in the majority of cases, a debtor need not commit any more funds to pay unsecured creditors than is required by § 1325(b)(1) in order for the plan to be filed in good faith. But the passage of BAPCPA did not wholly eliminate consideration of a debtor's ability to pay in the context of a good faith analysis under § 1325(a)(3)…. [T]his Court will continue to review plans to determine if the proposed plan constitutes "an abuse of the provisions, purpose or spirit of Chapter 13." For example, a debtor who deducts substantial amounts of secured debt for luxury items on Form 22C may technically comply with

---

[7] The Court wonders whether the statute has the unintended effect of encouraging debtors to not pay their debts as quickly as they can. If that was not the intent of Congress, "it is the responsibility of Congress, not the court, to correct the statute." *Id*. at 250.

> §1325(b), but be unable to demonstrate that a plan offering only minimal or no payments to unsecured creditors was proposed in good faith. On the other hand, the Court would not expect to hear challenges to a debtor's good faith in proposing a plan merely because the debtor could pay an additional $50 in months 49 through 60 of the plan.

*In re Williams*, 394 B.R. at 572-73 (citations omitted). The *Williams* court held that the plan was proposed in good faith because the trustee "failed to make any specific allegations of bad faith under § 1325(a)(3), other than the ability of [the] Debtors to fund a greater repayment plan." *Id*. at 573. The court found that there was no other evidence to show that the debtors were attempting to manipulate the Code or mislead the Court. *Id. See also In re Richall*, 470 B.R. at 250 (while not using the specific term "intermediate approach," court finds that a good faith analysis under § 1325(a)(3) need not require consideration of the amount of the plan payment unless the proposed payments "otherwise contribute to a finding of serious misconduct or abuse or unfair manipulation of the Code"); *In re Johnson*, 2011 WL 1671536, at *4-5 (adopts intermediate test and finds no bad faith where debtors had proposed 100% repayment to unsecured creditors and trustee did not allege that debtor engaged in "subterfuge, fraud, or other manipulative actions").

      This Court agrees with the intermediate approach. If the proposed plan payment meets the requirements of § 1325(b)(1)(A) or (B), the amount of the payment will not be considered in a good faith analysis *unless* other, additional facts suggest bad faith. The ultimate determination of good faith will be made on a case-by-case basis using the Seventh Circuit's "totality of circumstances" test. That test includes consideration of such factors as (1) whether the plan accurately states the secured and unsecured debts of the debtor; (2) whether the plan correctly states debtor's expenses; (3) whether the percentage of repayment of unsecured debts is correct;

(4) whether inaccuracies in the plan amount to an attempt to mislead the bankruptcy court; (5) whether the proposed payments indicate a fundamental fairness in dealing with creditors; (6) whether the debtor is really trying to pay creditors to the reasonable limit of his ability or trying to thwart them; and (7) whether the plan accurately reflects the debtor's financial condition and affords substantial protection to unsecured creditors.  *In re Smith*, 286 F.3d at 466 & n.3 (citing *In re Rimgale*, 669 F.2d at 432-33).

In the instant case, the Trustee has not alleged that the Debtors engaged in any manipulative, deceitful or misleading conduct.  Rather, he argues that the plan is fundamentally unfair because unsecured creditors could be paid sooner.  The Code, however, does not require the Debtors to pay creditors over a shorter period of time *if* they are paying those creditors 100% of their claims.  In short, the Debtors' plan proposes exactly what the Code permits.  While it seems more prudent for the Debtors to pay off their debts in a shorter amount of time, the Court cannot conclude that a plan is fundamentally unfair when it explicitly complies with the Code and there are no other indicia of bad faith.

### B. Can the Court Require Debtors to Pledge Excess Disposable Income to Future Plan Modifications under § 1325(a)(3) and/or under §105(a)?

The Court next turns to the Trustee's argument that the Debtors' refusal to commit excess disposable income to future plan modifications demonstrates bad faith.  Even if the Court finds that this is not a factor to consider in the good faith analysis under § 1325(a)(3), the Trustee argues that the Court may nonetheless require such a pledge under § 105(a) of the Bankruptcy Code.[8]

---

[8] Section 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title

9

The Trustee relies on *In re Crawford*, 2016 WL 4089241 (Bankr.W.D.Tx. Aug. 24, 2016). In *Crawford*, the debtors' plan proposed 100% payment to unsecured creditors over five years, but because their plan payment did not include all of their disposable income, the trustee objected to confirmation. The trustee argued that as a condition of confirmation, the debtors must agree to provide for full payment of unsecured claims in any future plan modifications.[9] In addition, the trustee argued that the debtors must pay all claims in full to receive a discharge. The court found that while it was not bad faith to pay creditors over five years when they could be paid sooner, conditioning confirmation on the debtors' guarantee of a 100% pool to unsecured creditors in future plan modifications was permissible under § 105(a) of the Bankruptcy Code. *Id*. at *4-6. Further, the court concluded that its decision did not violate the Supreme Court's holding in *Law v. Siegel*, 134 S.Ct. 1188 (2014).

In *Law v. Siegel*, the chapter 7 trustee filed a motion to surcharge the debtor's $75,000.00 homestead exemption to compensate the trustee for litigation costs incurred in a lengthy, complicated and expensive lawsuit filed by the trustee against the debtor. The bankruptcy court granted the motion and its decision was eventually affirmed by the Ninth Circuit Court of Appeals. On appeal, the Supreme Court reversed, finding that the equitable powers of a bankruptcy court "must and can only be exercised within the confines of the Bankruptcy Code." *Id*. at 1194. Bankruptcy courts cannot use the equitable powers granted by

---

> providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. §105(a).

[9] In this case, unlike *Crawford*, the Trustee does not request that all future plan modifications pay 100% to unsecured creditors. Rather, the Trustee asks that the Debtors contribute the excess disposable income not currently committed to the plan in the event of future modifications.

§105(a) if doing so contravenes express provisions of the Code. *Id*. at 1194-95. The Court ultimately held that using § 105(a) to surcharge exempt property was in direct contravention of debtor's right to claim the homestead exemption granted by 11 U.S.C. § 522. *Id*. at 1198.

The *Crawford* court found that its decision was consistent with *Law v. Siegel* because imposing conditions on confirmation did not contravene § 1325(b)(1) or any other Code provision, explaining as follows:

> The Court could confirm the plan with an [applicable commitment period] of 60 months with less than all disposable income being paid through the Plan. The conditions are that Debtors must pay all claims in full to receive a chapter 13 discharge and that Debtors cannot modify the Plan to pay less than 100% distribution to creditors…. [T]he debtors will receive precisely what they sought at their confirmation hearing—confirmation of their chapter 13 Plan with an ACP of 60 months—with the added condition that their Plan remain at a 100% distribution to all creditors.

*Id*. In the instant case, the Trustee urges this Court to follow the reasoning in *Crawford* and condition confirmation of the plan on the Debtors' promise to pay excess disposable income in future plan modifications.

The Court finds that the Debtors' refusal to guarantee excess disposable income in the future does not demonstrate bad faith. Nothing in the Code requires Debtors to make that pledge. Furthermore, the Court finds that it cannot use its equitable powers under § 105(a) to impose the pledge as a condition of confirmation. Doing so modifies § 1325 by adding a requirement for confirmation not otherwise found in § 1325(a) or (b). Section 1325(a) provides that the court *shall* confirm a plan if all provisions of that statute are satisfied. Section 1325(b) contains additional provisions that must be met if an objection to confirmation is filed. In this case, the Debtors have satisfied the provisions of both § 1325(a) and § 1325(b). Using § 105(a)

to impose further confirmation requirements – thereby modifying the Code's provisions governing chapter 13 plan confirmation – is clearly prohibited by *Law v. Siegel*.

Moreover, a post confirmation plan modification is not before the Court at this time. The Court is not inclined at this stage to speculate about future plan modifications, if any, or possible future changes in income or expenses. If, however, the Debtors do propose a post confirmation plan that pays less than 100% to unsecured creditors, the Court will take a very close look at the reasons for doing so and if the facts warrant, the question of good faith will be examined at that time.[10]

### C. Does § 1325(b)(1)(A) Require the Debtors to Pay Interest to Unsecured Creditors?

The Trustee's final argument is that if the Debtors do not contribute all disposable income to their plan, general unsecured creditors are entitled to interest on their allowed claims. Or, stated another way, the Trustee argues that "when a debtor elects to delay payments to creditors under § 1325(b)(1)(A), those unsecured creditors are entitled to interest on their claims to compensate for the delay." Chapter 13 Trustee's Brief in Support of Second Amended Objection to Confirmation, at p. 11.

The Trustee focuses on the language of § 1325(b)(1)(A). As previously stated, the statute provides that if the Trustee or an unsecured creditor objects to confirmation, the court may not approve the plan "unless, *as of the effective date of the plan, the value of property to be distributed under the plan* on account of such claim is not less than the amount of such claim."

---

[10] Section 1329 provides, in part, that the requirements of §1325(a) apply to any post confirmation plan modifications. 11 U.S.C. § 1329(b)(1). Under this Court's decision in *In re King*, the requirements of §1325(b) also apply. *In re King*, 439 B.R. 129 (Bankr.S.D.Ill. 2010).

Although the Court need not address a post confirmation plan at this juncture, the Court wonders how a proposed plan modification paying less than 100% without accounting for failing to pay all disposable income in prior plans will be resolved…but that is for another day.

12

11 U.S.C. § 1325(b)(1)(A) (emphasis added). According to the Trustee, a present value requirement is inherent in the statute's language. He compares the statute's language to that found in § 1325(a)(4) (liquidation test) and § 1325(a)(5)(B)(ii) (cramdown provision). The pertinent wording contained in those two statutes is as follows: "*the value, as of the effective date of the plan, of property to be distributed under the plan*." 11 U.S.C. §§ 1325(a)(4) and 1325(a)(5)(B)(ii) (emphasis added).

The Trustee acknowledges that the language of § 1325(b)(1)(A) differs slightly from that found in §§ 1325(a)(4) and (a)(5)(B)(ii), *i.e.*, in the latter two statutes, the word "value" precedes the phrase "as of the effective date of the plan." He cites *In re Hight-Goodspeed*, 486 B.R. 462 (Bankr.N.D.Ind. 2012) to support his assertion that this slight difference can be reconciled. The *Hight-Goodspeed* court found that despite the placement of the word "value" in § 1325(b)(1)(A), the statute contains the same present value requirement found in §§ 1325(a)(4) and (a)(5)(B)(ii). *Id*. at 465. The court cited other Code provisions that contain a present value requirement,[11] noting that "[t]hese provisions are uniformly interpreted to require a present value analysis of the proposed payments. In other words, if payments are being made over time, the debtor is required to pay interest to compensate for the delay." *Id*. at 464. While acknowledging the different wording in § 1325(b)(1), the court concluded that "the meaning of those words is not changed by relocating the phrase 'as of the effective date of the plan.'" *Id*. at 465. The court explained that the language of §1325(b)(1) differed "because Congress apparently wanted the concept of the effective date of the plan to apply to both the valuation of the distribution under (A) and to the disposable income alternative of (B) and by putting the phrase ["as of the effective date of the

---

[11] Those sections include §§ 1129(a)(7)(ii), 1129(b)(2)(A)(i)(II), 1225(a)(4), 1225(a)(5)(B)(ii), 1325(a)(4) and 1325(a)(5)(B)(ii).

plan"] into (b)(1) it was able to say that once rather than twice." *Id*. at 465. Other cases adopting this view and holding that § 1325(b)(1)(A) requires payment of interest include *In re Barnes*, 528 B.R. 501 (Bankr.S.D.Ga. 2015); *In re McKenzie*, 516 B.R. 661 (Bankr.M.D.Ga. 2014); and *In re Sampson-Pack*, 2014 WL 1320371 (Bankr.D.Md. March 31, 2014).

The court in *In re Gillen*, 568 B.R. 74 (Bankr.C.D.Ill. 2017) reached a contrary result. The court found the placement of the phrase "as of the effective date of the plan" to be an important distinction, explaining:

> As used in section[s] 1325(a)(4) and (a)(5)(B)(ii), "value, as of the effective date of the plan," is uniformly recognized to mean "present value" …. The differing juxtaposition of the phrase "as of the effective date of the plan" [in § 1325(b)(1)] must be considered to be a purposeful placement by Congress that conveys a distinction from the similar but not identical phrasing of sections 1325(a)(4) and (a)(5)(B)(ii)…. [I]f Congress had intended to require a debtor to pay interest on allowed unsecured claims under section 1325(b)(1)(A), Congress would have maintained statutory consistency by placing the phrase "as of the effective date of the plan" immediately after the word "value." The different placement is best construed as conveying a different meaning.

*Id*. at 78-79 (citations omitted). At least three other courts also have concluded that §1325(b)(1)(A) does not require the payment of interest. *See In re Edward*, 560 B.R. 797 (Bankr.W.D.Wa. 2016); *In re Stewart-Harrel*, 443 B.R. 219 (Bankr.N.D.Ga. 2011); and *In re Ross*, 377 B.R. 599 (Bankr.N.D.Ill. 2007). Those courts agree with *In re Gillen* that the placement of the word "value" *after* the phrase "as of the effective date of the plan" distinguishes § 1325(b)(1)(A) from other Code provisions containing a present value requirement.

This Court agrees that the language of § 1325(b)(1)(A) cannot be interpreted to require the payment of interest to unsecured creditors. The phrase "as of the effective date of the plan" in § 1325(b)(1) precedes the word "value." In §§ 1325(a)(4) and (a)(5)(B)(ii) (and other "present

14

value" Code provisions), however, the phrase "as of the effective date of the plan" follows and clearly modifies the word "value." *In re Stewart-Harrel*, 443 B.R. at 222.  As explained by the court in *In re Edward*, "the phrase 'as of the effective date of the plan' [in § 1325(b)(1)] is simply a reference to *when* the Court determines what is being paid to the allowed unsecured claims, i.e., either (A) the amount of such claim, or (B) the debtor's projected disposable income in the applicable commitment period." *In re Edward*, 560 B.R. at 800 (emphasis in original). *See also In re Stewart Harrel*, 443 B.R. at 222 ("effective date of the plan" in § 1325(b)(1) refers to the date as of which the court is to make the determination of either (A), payment in full, or (B), payment of all projected disposable income).  Collier's supports this interpretation of §1325(b)(1)(A):

> [T]his subsection requires only payment of such claims in full, and not payment of property having a "value as of the effective date of the plan" equal to full payment. It does not require payment of the present value of the claim, though such payment may be independently required under the best interests of the creditors standard…. Although the words "as of the effective date of the plan" appear earlier in subsection 1325(b), their presence does not appear to indicate a requirement of plan payments having a present value equal to the full amount of unsecured claims. If this had been Congress's intent, Congress would presumably have used the same language as it used elsewhere to indicate a present value test, "value, as of the effective date of the plan…." It seems more likely that the words "as of the effective date of the plan" in subsection 1325(b) refer only to the timing of the court's analysis under that subsection.

8 *Collier on Bankruptcy*, ¶ 1325.11[3] at 1325-57 (16th ed. 2017).

      The Court also agrees with the reasoning of *In re Gillen* as to why payment of interest is required under § 1325(a)(4), but not under § 1325(b)(1)(A). Unsecured creditors with claims in a chapter 7 case have an immediate right to payment upon liquidation of the debtor's nonexempt assets. Under the liquidation analysis or "best interests of creditors test" of § 1325(a)(4),

payment of interest is necessary to put unsecured creditors in the same position they would have enjoyed in the hypothetical chapter 7 liquidation. *In re Gillen*, 568 B.R. at 78. Unsecured creditors in chapter 13 do not otherwise have a right to immediate payment in full at the front end of the case. *Id*. "Where there is no forced deferral of any pre-existing payment right, there is no entitlement to interest." *Id*. at 79.

For the reasons set forth above, the Court finds that the Debtors' chapter 13 plan complies with the requirements set forth in § 1325(b)(1), that the plan was filed in good faith and that the debtors are not required to pay interest under § 1325(b)(1)(A). Accordingly, the Trustee's objection to confirmation is OVERRULED.

See Order entered this date.

ENTERED: February 16, 2018

/s/ Laura K. Grandy
─────────────────────────────
UNITED STATES BANKRUPTCY JUDGE